FERNANDO SIERRA BERDECÍA, COMISIONADO DEL TRABAJO DE PUERTO RICO, ETC., querellante y apelante, *v.* SAN MIGUEL FERTILIZER CORPORATION y PUERTO RICO OIL & FEED PRODUCTS CORPORATION, querelladas y apeladas.

Núm. 10628.—*Sometido:* Abril 1, 1952. *Resuelto:* Abril 18, 1952.

*Joaquín Gallart Mendía* y *Domingo Candelario,* abogados del Departamento del Trabajo y a su vez del apelante; *Clemente Ruíz Nazario* y *F. L. San Miguel,* abogados de las apeladas.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Iniciada por el Comisionado del Trabajo en representación y para beneficio de ciertos empleados una querella en reclamación de salarios,([1]) la misma fué sometida al tribunal inferior a virtud de una estipulación que textualmente copiada se lee así:

---

([1]) En la querella se alega que los empleados que en ella se mencionan trabajaron en el establecimiento que tienen las corporaciones querelladas en Mayagüez, destinado a la distribución o venta al por mayor de los productos de aquéllas, bajo las disposiciones del Decreto Mandatorio núm. 16, y que se les adeuda un total de $549.47. Se solicita sentencia por dicha cantidad, más una suma igual por concepto de penalidad.

"Comparecen ahora ambas partes en el presente caso, por representación de sus respectivos abogados que suscriben, y ante el Hon. Tribunal, respetuosamente exponen:

"1. Que se dan por recíprocamente admitidos los siguientes hechos:

"(*a*) Que ambas querelladas operaban conjuntamente, para las fechas a que se refiere la querella origen de este caso, y aún operan, una sucursal en la ciudad de Mayagüez, Puerto Rico, destinada a la distribución y venta de los abonos fertilizantes y alimentos para animales, respectivamente, manufacturados por las querelladas en San Juan, Puerto Rico, exclusivamente a colonos, otros agricultores, avicultores y a ganaderos de aquel distrito de Mayagüez, para el uso por dichos colonos, agricultores, avicultores y ganaderos en sus respectivos fundos y actividades y no para ser objeto de reventa.

"(*b*) Que los cuatro empleados en cuya representación y para beneficio de los cuales se formuló la querella en este caso, en las capacidades o funciones, durante los períodos y horas y por los salarios y tipos que se alegan en la querella, trabajaron para las querelladas en dicho establecimiento, interviniendo en las ventas descritas en el párrafo precedente.

"(*c*) Que toda la controversia existente entre las partes es una de derecho, o sea, de interpretación de los Decretos Mandatorios núms. 8 y 16, sobre ventas al por menor y al por mayor, respectivamente, ya que mientras la parte querellante sostiene que las ventas descritas en el párrafo '*a*' precedente son ventas al por mayor cubiertas por el Decreto núm. 16, la otra parte sustenta el criterio de que dichas ventas son al por menor, y por lo tanto, cubiertas por el Decreto núm. 8.

"3. Que en consideración a lo arriba expuesto, ambas partes estiman innecesario entrar en práctica de prueba alguna, y han convenido y estipulado someter, como por la presente someten el presente caso, para resolución final por este Tribunal, a base de la cuestión de derecho que se deja planteada, todo ello sin perjuicio de los respectivos derechos que pudieran ellas ejercitar contra tal resolución, de conformidad con la legislación vigente sobre la materia, cuyos derechos se dejan reservados."

Con vista de la referida estipulación y fundada en elaborada opinión, dicho tribunal dictó sentencia desestimando la querella en todas sus partes, con las costas de oficio. El querellante apeló y sostiene ahora que el tribunal a quo erró "al

concluir y resolver que la sucursal operada conjuntamente por las querelladas en Mayagüez, donde prestaron sus servicios los empleados para cuyo beneficio se interpuso la querella, es un negocio de ventas al por menor, y como tal cubierto por el Decreto Mandatorio núm. 8, y no uno dedicado al comercio al por mayor y consiguientemente cubierto por el Decreto Mandatorio núm. 16."

La única cuestión a determinarse es, pues, si el trabajo efectuado por los empleados para cuyo beneficio se instó la querella esta cubierto por el Decreto Mandatorio núm. 8, como sostienen las querelladas, o por el Decreto Mandatorio núm. 16, según alega el querellante.([2])

Al discutir el error señalado el apelante insiste en que su contención es que la frase "establecimientos comerciales" incluye a los establecimientos agrícolas e industriales, y por consiguiente, a los colonos, otros agricultores, ganaderos y avicultores, compradores de los abonos y alimentos de la sucursal de las querelladas, para usarlos en sus respectivos fundos y actividades; y que, armonizando ambos decretos, entiende que ventas al por mayor son aquéllas que se hacen a compradores que adquieren la mercancía con fines de lucro, bien a través de la reventa o del consumo industrial, quedando las ventas al por menor limitadas a los traspasos directos a los consumidores personales. Discrepamos. Las definiciones dadas por los propios decretos envueltos, de las frases "al por menor" y "al por mayor", nos obligan a ello. Veamos:

El Decreto Mandatorio núm. 8 de la Junta de Salario Mínimo dispone en su apartado A(1) lo siguiente:

*"Definiciones.*

"Las palabras a continuación expresadas tendrán el significado y alcance que se pasa a indicar, para fines y cumplimiento del presente Decreto, a menos que de su texto se deduzca otra intención:

---

[2] El Decreto Mandatorio núm. 8 fija como salario mínimo semanal uno de no menos de $12 en la primera zona, $10 en la segunda y $8 en la tercera; mientras que el Decreto Mandatorio núm. 16 fija un salario mínimo no menor de 50¢ por hora.

"1. *Definición del Negocio:* El Negocio de ventas al por menor al cual se aplica este Decreto es el que se describe en la siguiente definición:

"El Negocio de Ventas al por Menor comprende sin que ello se entienda en modo alguno como limitación, todo acto, proceso, operación, trabajo o servicio necesarios, incidentales o relacionados con las ventas al por menor, a traspasos directos a los consumidores, de cualquier clase de mercaderías o artículos a cambio de dinero, prestación o cosa de valor, cuando tales ventas o traspasos se originen, concierten o consumen (sic) en algún establecimiento o en sitio cualquiera destinado total o parcialmente a esos fines, o cuando se hagan fuera de dicho establecimiento o sitio a su nombre o para su beneficio. Quedan excluídos, sin embargo, los negocios, industrias, ocupaciones o ramo de los mismos que en el Decreto núm. 6 de esta Junta aplicable a hoteles, restaurantes, cantinas y fuentes de soda (el cual no quedará menoscabado en forma alguna), son objeto de reglamentación o están exceptuados de su alcance."

Y el Decreto Mandatorio núm. 16 de la misma Junta, provee en su art. I(A) y (B) lo que pasamos a copiar enseguida:

"*Definiciones.*
"Para los fines y cumplimiento del presente decreto, a menos que de su texto se deduzca otro sentido, las palabras y frases subrayadas a continuación tendrán el significado siguiente:

"A. *Comercio Al Por Mayor* abarca todo establecimiento, empresa o agencia que se dedique a la venta de mercadería a detallistas, a establecimientos comerciales o a otros mayoristas. Incluye mayoristas, agentes, corredores, comisionistas y sucursales de venta de empresas fabriles. Comprende los procesos de compra, venta, almacenaje, transporte o cualquier actividad relacionada con dichos procesos. No abarcará, sin embargo, aquellos establecimientos que tengan dos o menos empleados parcialmente dedicados a cualquiera de los procesos enumerados en esta definición, los cuales establecimientos quedarán sujetos a las disposiciones del decreto mandatorio que sea aplicable a la actividad que conjuntamente lleven a cabo con las de ventas al por mayor. Tampoco abarcará cualquier subdivisión de un establecimiento que funcione con empleados cuyo tiempo esté totalmente dedicado a los procesos correspondientes del comercio al detall.

"B. *Sucursal de Venta de Empresa Fabril* significará un establecimiento subsidiario de una empresa fabril organizado en local distinto al de ésta y destinado para vender o distribuir al por mayor los productos de dicha empresa fabril."

De la estipulación presentada por las partes se desprende claramente que la sucursal que las querelladas operan conjuntamente en la ciudad de Mayagüez se dedica a "la distribución y venta de los abonos fertilizantes y alimentos para animales, respectivamente, manufacturados por las querelladas en San Juan, Puerto Rico, exclusivamente a colonos, otros agricultores, avicultores y a ganaderos de aquel distrito de Mayagüez, para el uso por dichos colonos, agricultores, avicultores y ganaderos en sus respectivos fundos y actividades y no para ser objeto de reventa."

Si de acuerdo con la definición dada a la frase "al por menor" por el Decreto Mandatorio núm. 8 el negocio de venta de esa índole comprende los traspasos directos a los consumidores, es lógico inferir que la distribución y venta por la sucursal de la querellada de los abonos fertilizantes y alimentos para animales a los colonos, agricultores, etc., para ser utilizados por éstos en sus respectivos fundos y actividades, y no para la reventa, constituye indudablemente un negocio de venta al por menor.  La definición que de "comercio al por mayor" nos da el Decreto Mandatorio núm. 16 nos reafirma en ese criterio, ya que, como hemos visto, esa clase de comercio abarca "todo establecimiento, empresa o agencia que se dedique a la venta de mercadería a detallistas, a establecimientos comerciales o a otros mayoristas" y toda vez que "sucursal de venta de empresa fabril significará un establecimiento subsidiario de una empresa fabril organizado en local distinto al de ésta y destinado para vender o distribuir al por mayor los productos de dicha empresa fabril."

La sucursal de las querelladas, conforme aparece de la estipulación, no se dedica a la venta de mercadería a detallistas, a establecimientos comerciales, ni a otros mayoristas, ni a vender o distribuir "al por mayor" los productos de una em-

presa fabril. Por el contrario, se dedica, repetimos, a distribuir y vender los abonos fertilizantes y alimentos para animales manufacturados por las querelladas en San Juan, exclusivamente a colonos, agricultores, etc. para ser usados por éstos en sus propias fincas y actividades.

Ante definiciones tan claras y precisas dadas por los propios decretos, es innecesario acudir a las que de las frases "al por menor" y "al por mayor" puedan darnos los diccionarios, las enciclopedias o casos ya resueltos. Tan clara nos parece la cuestión que, a nuestro juicio, basta una somera lectura de las definiciones dadas por los respectivos decretos para convencer a cualquiera de que el querellante no está en lo cierto al sostener que el trabajo efectuado por los empleados de las querelladas está cubierto por el primer decreto y no por el segundo.

*Debe confirmarse la sentencia apelada.*